[Civ. No. 2973. Third Appellate District.—October 21, 1925.]

## OLGA FALKE PARKER, Appellant, v. FRANK C. PARKER, Respondent.

[1] HUSBAND AND WIFE — COMMON-LAW MARRIAGE—EVIDENCE—FIND-INGS.—In this action by a wife for separate maintenance, and for a division of the community property, while the evidence showed that plaintiff and defendant had lived together during various periods prior to their marriage and had held themselves out to others as husband and wife, the evidence, and particularly the testimony of defendant positively denying that their illicit relationship was accompanied by a verbal contract of marriage, fully justified the finding of the trial court against the common-law marriage asserted by plaintiff.

[2] ID.—COMMUNITY PROPERTY—EVIDENCE—FINDINGS.—In such action, the testimony of defendant, which was uncontradicted, as to the result of his various business ventures after his marriage, and the agreement entered into by plaintiff and defendant following their separation and wherein it was agreed "that the property now in the hands of each of said parties at the time of the consummation of this agreement shall be the separate property of each of said parties," justified the trial court in finding that there was no community property belonging to plaintiff and defendant.

[3] ID.—PROFITS OF HUSBAND—BURDEN OF PROOF—FINDINGS.—In such action, in so far as defendant's net profits entered into the question of the amount to which plaintiff was entitled for her maintenance, the burden was on her to show what those profits were; and in the absence of sufficient evidence to enable the court to make a finding in plaintiff's favor on that issue, the failure of the court to make such finding was not ground for reversal.

[4] ID.—SEPARATE MAINTENANCE — DISCRETION OF TRIAL COURT.—The amount to be allowed a wife for her maintenance is largely in the discretion of the trial court, subject to revision only in case of an abuse of discretion; and in this action it did not appear that such discretion was abused.

[5] ID.—INCREASE OF ALLOWANCE—CONTINUING JURISDICTION.—Under section 137 of the Civil Code, the trial court may at any time, on

3. See 24 Cal. Jur. 945.
4. See Cal. Jur. 1014; 1 R. C. L. 929.
5. See 1 Cal. Jur. 1037; 1 R. C. L. 946.

a proper showing by the wife, increase the monthly separate maintenance to be paid by the husband.

---

(1) 38 C. J., p. 1331, n. 97. (2) 31 C. J., p. 53, n. 47. (3) 4 C. J., p. 1059, n. 1, p. 1060, n. 12; 30 C. J., p. 1087, n. 52 New, p. 1090, n. 29; 23 C. J., p. 11, n. 32. (4) 30 C. J., p. 1090, n. 16, p. 1091, n. 51, p. 1097, n. 32. (5) 30 C. J., p. 1095, n. 64.

APPEAL from a judgment of the Superior Court of San Joaquin County. D. M. Young, Judge. Affirmed

The facts are stated in the opinion of the court.

Parkinson & Parkinson for Appellant.

Case & Forslund for Respondent.

FINCH, P. J.—Plaintiff brought this action for permanent maintenance and a division of alleged community property, on the grounds of desertion, wilful neglect to provide and extreme cruelty.

In the first three causes of action it is alleged that the parties intermarried on the eleventh day of June, 1921, and ever since have been and now are husband and wife. It is further alleged therein that on the fourteenth day of August, 1914, the parties "began to live together as husband and wife in England, and that plaintiff was induced so to do by the promise of defendant to plaintiff that he would marry plaintiff as soon as they arrived in New York; that plaintiff at defendant's request took the name of Mrs. Olga Parker; that plaintiff and defendant continued to live together as husband and wife, at all times since the 14th day of August, 1914," until their separation as alleged in the complaint, after their marriage on the eleventh day of June, 1921.

In the fourth cause of action it is alleged that the parties entered into a contract marriage in the state of New York in September, 1914, and thereafter lived together in the state of New York as husband and wife until May, 1918, when they came to California; that such contract and assumption of marital rights constituted a valid legal marriage under the laws of that state; and that at all times

since such common-law marriage the parties have been and now are husband and wife.

The complaint alleges that property of the value of $84,000 stands in the name of defendant, all of which, except $2,000, is community property, acquired by the joint efforts of the parties while residing in California; that plaintiff is "nervous and unable to work and produce any income whatever" and "has no income sufficient to provide for her the necessaries of life"; and that $500 a month is a reasonable sum to be allowed her for permanent support and maintenance. The prayer, in so far as material here, is for a division of the alleged community property and permanent maintenance in the sum of $500 a month.

The answer admits the marriage of June 11, 1921; denies the alleged contract marriage; denies that the defendant ever promised to marry plaintiff; admits that the parties at various times lived together and traveled together temporarily as husband and wife, but alleges that they did not so do with any "intention whatever of being or becoming husband and wife"; alleges that on the twentieth day of August, 1921, plaintiff commenced an action against defendant in which she alleged that she was the owner of one-half of all of defendant's property; that the parties "compromised said action" and defendant "paid plaintiff five thousand dollars upon her promise and agreement to release all claims to defendant's property." The agreement, executed August 24, 1921, is attached to and made a part of the answer. The answer denies that the property standing in defendant's name is community property, or of a value in excess of $40,000 or was accumulated while the parties were living together as husband and wife, and denies that $500 is a reasonable sum to be allowed plaintiff for maintenance. There are many other allegations in the complaint and allegations and denials in the answer, but enough has been stated to show the issues involved in this appeal. There are no children of the marriage.

The court found that the parties did not enter into the alleged common-law marriage; that "prior to the 11th day of June, 1921, neither of the parties ever agreed or intended to be or to become husband and wife, and neither of them regarded themselves as such"; that "by mutual consent, and in order that they might more conveniently

and safely practice . . . illicit sexual intercourse without attracting the attention of the public, the plaintiff assumed the name of Mrs. Frank C. Parker," and that the parties "represented to persons with whom they came in contact that they were husband and wife"; that at various times and places they lived together in such meretricious relation, but that prior to June 11, 1921, they "never agreed to live together as husband and wife, save and except for the false and wrongful purpose of concealing their illicit sexual intercourse"; that the parties executed the aforesaid agreement of August 24, 1921; that at the time of the marriage on June 11, 1921, and at the time of the trial, the defendant had property of the value of $45,000; that "all of said property was acquired by him prior to his marriage with plaintiff or was purchased by defendant after such marriage with funds possessed by him prior to said marriage"; that "there is no community property belonging to the parties"; that the plaintiff has $4,500 in cash, which is her separate property, and which produces an income of $180 a year; that she "is thirty-nine years of age, is in good health, and is in all respects capable of earning sufficient money for her support and maintenance"; that "defendant's income is uncertain, changeable and fluctuating; that during certain periods defendant has had a net income realized from his labors and from his separate property which aggregates seven hundred dollars per month; and at other times defendant has suffered monthly losses by reason of insufficient proceeds from business to pay overhead expenses"; that the sum of $100 a month "is a reasonable and proper amount to be contributed by defendant to plaintiff, and said sum when added to the funds which plaintiff is capable of earning will enable her to live in a manner befitting her rank, station and requirements in life, and in the manner in which defendant would be able to support her if said parties were living together as husband and wife." The court found in favor of plaintiff on the issues of desertion and wilful neglect and against her on the issue of extreme cruelty. Judgment was entered in accordance with the findings and the plaintiff has appealed.

[1] Appellant contends that the finding against the alleged common-law marriage is contrary to the evidence.

Plaintiff testified that a verbal contract of marriage was entered into by the parties as alleged. Defendant's testimony is equally positive to the contrary. Admittedly, they lived together during various periods after September, 1914, and held themselves out to others as husband and wife. Admittedly, also, they had continuously indulged in acts of sexual intercourse with each other for many months prior to the alleged contract marriage. The plaintiff testified that this first occurred after the defendant had asked her to marry him. He denies that he ever asked her to marry him or that there was any understanding, prior to June, 1921, that the parties would marry. They first met during the latter part of the year 1912. Both were of mature years and wide experience. The plaintiff speaks the German, Swedish, Finnish, Russian, Danish, and English languages and, probably by reason thereof, she made many trips to Europe as the companion of wealthy American women. She testified that she had crossed the Atlantic about seventeen times. The illicit relations between the parties commenced about three months after they first met, or in the early part of 1913. From the foregoing statement it is apparent that the finding complained of has sufficient support in the evidence, and the details of the illicit relations between the parties may well be omitted.

[2] It is urged that the evidence does not support the finding to the effect that the defendant accumulated no property after the marriage and that the evidence shows that at least $6,000 was accumulated since the marriage. The defendant testified that he purchased the Lyric Theater in Stockton August 12, 1919; that he then had between $8,000 and $9,000, a part of which he used in making the purchase; that at the time of the marriage in 1921 he owned property of the value of between $40,000 and $50,-000; and that at the time of the trial the value of all his property was between $30,000 and $40,000. He gave lists of the property owned by him at both times and an estimate of the values thereof. No witness testified to the contrary. The defendant owns and conducts, alone or in association with others, several moving-picture theaters and also is the owner of a one-third interest in a prune orchard. His other property consists of stocks and bonds and moneys deposited in banks. He receives a salary of

$20 a week from one of the theaters in which others are interested. He testified that he had no other income, except the profits which he receives from the foregoing businesses and property. "All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property." (Civ. Code, sec. 163.) The compromise agreement of August 24, 1921, contains the following covenant: "It is further agreed that the property now in the hands of each of said parties at the time of the consummation of this agreement shall be the separate property of each of said parties." The court was justified in finding that "there is no community property belonging to the parties."

Appellant contends that the finding, to the effect that the defendant during certain periods has had a net income of $700 a month and at other times has suffered monthly losses, "is no finding of fact whatever and is too indefinite upon which to base their award," and that the "evidence supports finding of an average income of $750 per month throughout the year." Defendant's first testimony relative to his income was given August 1, 1922. He then testified: "My income from the Lincoln theatre has been $20 a week and from the Modesto theatre of course nothing at all, there won't be for a long while. From the Concord theatre I have never taken a nickel out, I am trying to sell it, it has been a losing proposition. And the Lyric theatre I have lost anywhere from $150 to $200 a week for the last three months, it approaches that. I am trying to sell it too. . . . It has not paid last winter. I may have got a living out of it but that is not making any real money. . . . Up until around last September or October, November, I was making money about three months last year, then from there on I started to lose money. I have been losing money ever since. . . . It is just occasionally when you make money, I have been losing money now for a year . . . on the Lyric. . . . The receipts of the Lyric theatre during the last three months was $11,881.75, the expenditures was $13,815.19. . . . My best year was almost two years ago. . . . It is more expensive now, the operator's or union salaries have gone up, the pictures are more expensive, advertising is more expensive." The defendant

was again examined as a witness on the 1st of November, 1922. Relative to receipts of the Lyric Theater, he then testified: "It has made a little money since I was here last. . . . I don't think it is making a penny these last two weeks. Before that time I made in the neighborhood of $800 or $1,000 when I had some big pictures there. . . . I had a bunch of big pictures I put on September 1st up until about two weeks ago." He further testified that from July 27, 1922, when it was opened, to November 1st of that year, the receipts from the Modesto theater averaged $200 a month above operating expenses. The defendant owns a half interest in that theater. At plaintiff's request the defendant produced his account-books, which he testified contained all of his receipts and disbursements. Counsel for plaintiff examined the defendant at considerable length relative to receipts during the months of September and October of every year since defendant commenced business in Stockton. They were as follows: 1919, $10,088; 1920, $12,432; 1921, $8,026; 1922, $10,330. The defendant testified that the expenses of 1921 and 1922 were "almost double" what they were in 1919 and 1920; that his operator's weekly salary had been increased from $37.50 to $49; that of organist from $35 to $75; ushers from $7 to $10; cashier from $10 to $16, and janitor from $10 to $14, and that the price of pictures had "increased almost two or three hundred per cent." His testimony shows that his profits in 1920 were about $10,000. The evidence also showed that certain amounts paid out in the purchase of property during 1921 and 1922 had been entered on his books as expenses. The defendant testified that counsel for plaintiff was "picking out the best weeks we have ever had." Showing the net profits for such weeks does not justify the inference that equal profits, or any profits were made during the year as a whole. The expenses would continue during periods of small receipts and may have resulted in such losses as to eat up the profits of the fat weeks. The court said: "There is a way of getting the exact balances there." Counsel for defendant replied: "Yes, we have submitted the books absolutely to counsel, he has been over and over the books previously over at the theater, he can produce it if he wishes." Counsel for defendant did not see fit to introduce the books in evidence.

Making proper deductions from the expense account of items improperly charged thereto, the plaintiff might readily have shown the defendant's net profits. [3] In so far. as the defendant's net profits enter into the question of the amount to which plaintiff is entitled for her maintenance, the burden is on her to show what those profits were. In the absence of sufficient evidence, an issue must be decided against the party having the burden of proof. Failure to find upon an issue which must necessarily have been found against the complaining party is not ground for reversal.

[4] The amount to be allowed a wife for her maintenance is largely in the discretion of the trial court, subject to revision only in case of an abuse of discretion. In this case it does not appear that such discretion has been abused. The court found, on sufficient evidence, that during the meretricious relationship of the parties, "the plaintiff was supported partly by her own labor and partly by such funds as the defendant voluntarily gave to her"; that in July, 1919, "defendant left plaintiff in Pasadena, California, and came to Stockton, without the intention of returning to plaintiff, or of again resuming the aforesaid meretricious relations; that plaintiff remained in Pasadena for a period of eighteen months, during whch time very little correspondence was exchanged between the parties; that in January, 1921, plaintiff came to Stockton where defendant had established himself in business and endeavored to induce defendant to again resume the said meretricious relations; that defendant refused so to do; that thereupon plaintiff demanded that defendant marry her which defendant also refused to do"; that the plaintiff threatened that unless the defendant married her she would "expose to the public the meretricious relations in which plaintiff and defendant had lived" and promised "that if the defendant would marry her she would not ask or expect him to live with her; that after the performance of the ceremony she would immediately leave Stockton and 'would not bother the defendant any more'; . . . that she wanted defendant to marry her in order that she might legally use. his name in obtaining passports and returning to her native country, Finland, as an American citizen; . . . that relying upon the said promises made by

plaintiff, and fearing the threats of exposure and the damage to his reputation and business . . . and believing that plaintiff would keep and perform the said promises and agreements, the defendant consented to the performance of a marriage ceremony and the same was performed . . . on June 11, 1921; . . . that immediately after the said ceremony the parties separated''; that plaintiff failed to keep her promise, but ''on the contrary returned to the city of Stockton, frequently called at defendant's place of business and annoyed and molested him by requesting him to live with her, and on the 20th day of August, 1921,'' commenced the action against him hereinbefore referred to; and that ''defendant desired to avoid the scandal incident to the trial of the issues which would be joined by contesting the said action,'' and entered into the aforesaid contract of August 24, 1921. The foregoing statement of facts found by the court is not made for the purpose of excusing in any manner the reprehensible conduct of the defendant prior to the marriage of the parties, but of showing that this is not an ordinary case of a wife suing for maintenance, after living with her husband in lawful wedlock during the best years of her life. Such facts and circumstances would naturally appeal to the discretion of the court in fixing the amount to be awarded for maintenance. [5] On a proper showing by plaintiff, the court may at any time increase the monthly amount to be paid by the defendant. (Civ. Code, sec. 137.)

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.